UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
Veronica Robledo and Karin Maria
Widmann,

        Plaintiff,

      - against -

Bond No. 9 a/k/a Bond No. 9 Parfume
Leasehold, Inc. a/k/a No. 9 Parfume
Leasehold, Inc. a/k/a and incorporated as
Bond No. 9 Fragrance, Inc., and Laurice
Rahme, Individually,

        Defendants.
----------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9-3-13
```

12 Civ. 6111 (ALC)

**Memorandum & Order**

**ANDREW L. CARTER, JR., United States District Judge:**

    Before the Court is Defendants' motion for judgment on the pleadings and motion to dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(c) and 12(b)(1). For the reasons set forth below, this Court denies in part and grants in part Defendants' motion for judgment on the pleadings. Defendants' motion to dismiss is denied.

### FACTS

    On August 10, 2012, Plaintiffs Veronica Robledo ("Robledo") and Karin Maria Widmann ("Widmann") filed this lawsuit against their former employer, Defendants Bond No. 9 and Laurice Rahme (collectively "Defendants") alleging discrimination against Robledo in violation of 42 U.S.C. § 1981 ("Section 1981"); race discrimination, disparate treatment, hostile work environment in violation of New York City Human Rights Law § 8-101; and retaliation under New York City Administrative Code § 8-107(4)(a).

1

Defendant Laurice Rahme ("Rahme") hired Robledo as a Sales Representative in 2001 (Compl. ¶ 13). Robledo considers herself "Spanish-Black," but "never disclosed her self-assessed identity of "Black" to Defendant Rahme" (*Id.* at ¶¶ 2-3). Robledo worked for Rahme and the companies she owns for over a decade, both as a Sales Representative and Store Manager (*Id.* at ¶¶ 14-17). During her tenure, Robledo was subject to the direction, supervision and control of Rahme (*Id.* at ¶ 19), who promoted Robledo to a Store Manager position at Rahme's flagship store (*Id.* at ¶ 16) and nearly doubled Robledo's pay rate (from $18 to $30 hourly, with two separate raises occurring in 2010) (*Id.* at ¶¶ 14, 16). In 2005, Rahme relocated Robledo to Defendants' flagship store (*Id.* at ¶¶ 2, 15). Robledo was considered the "top selling associate" at Rahme's flagship store (*Id.* at ¶ 50). Like other sales associates, Robledo's job responsibilities entailed greeting customers visiting the store (*Id.* at ¶ 31), assisting walk-in customers to purchase store merchandise (*Id.* at ¶ 18), answering customers' questions concerning store merchandise (*Id.*), assisting in maintaining the orderly appearance of the store (*Id.*) and performing sales-related paperwork and computerized tasks (*Id.*).

Rahme hired Widmann, who is Caucasian, as a Store Manager on July 5, 2011 (*Id.* at ¶¶ 4-5). Rahme fired Widmann 7 months later (on February 16, 2012) for, among other things, stealing $25,000 in store products (*Id.* at ¶¶ 4-5, 59). Robledo and Widmann allege extensively that Rahme displayed bias towards black customers, and used a "code term 'we need the light bulbs changed'" to signal that black shoppers were in the store (*Id.* at ¶ 24, *passim*). However, Defendants never refused or denied such customers from making store purchases, and "[B]lack shoppers were some of the top customers at the flagship store" (*Id.* at ¶¶ 25, 29, 31-37, 47).

On November 30, 2012, Defendants filed a motion for judgment on the pleadings and to dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(c) and 12(b)(1) for lack of subject

matter jurisdiction. On January 29, 2013, Plaintiff filed a motion for sanctions against Defendants. For the reasons that follow, the Court denies in part and grants in part the motion for judgment on the pleadings. The Court denies the motion to dismiss and the motion for sanctions.

## DISCUSSION

### I. Motion for judgment on the pleadings under 12(c)

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." In considering a motion for judgment on the pleadings, a court must accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party. *Hayden v. Paterson,* 594 F.3d 150, 160 (2d Cir. 2010). "To survive a Rule 12(c) motion, the complaint must contain sufficient factual matter to 'state a claim to relief that is plausible on its face.'" *Graziano v. Pataki,* 689 F.3d 110, 114 (2d Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The plaintiff "must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell,* 550 U.S. at 555).

The standard for analyzing a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is identical to the standard for a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *Cleveland v. Caplaw Enters.,* 448 F.3d 518, 521 (2d Cir. 2006). On a motion to dismiss, this Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Ruotolo v. City of N.Y.,* 514 F.3d 184, 188 (2d Cir. 2008). A claim has "facial plausibility when the plaintiff pleads factual content that

3

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). "Determining whether a complaint states a plausible claim for relief will be a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of Commerce*, 694 F.Supp.2d 287, 296 (S.D.N.Y. 2010). Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010).

In ruling on a motion to dismiss, a "court may consider the facts as asserted within the four corners of the complaint together with the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (internal quotation and citation omitted). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (internal quotation marks and citations omitted).

The issue before the Court on this motion to dismiss "is not whether ... plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995), *cert. denied*, 519 U.S. 808 (1996) (citation omitted).

4

## II. 42 U.S.C. § 1981

Section 1981(a) provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens." 42 U.S.C. § 1981(a). For the purposes of § 1981, the term "make and enforce contracts" includes, "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). Thus, "discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment" is prohibited. *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 224 (2d Cir. 2004).

"The same elements constitute a claim for employment discrimination under 42 U.S.C. § 1981 as constitute a claim under Title VII." *White v. Eastman Kodak Co.*, 368 Fed.Appx. 200, 202, 2010 WL 726629 at *1 (2d Cir. Mar. 3, 2010). To establish a claim under § 1981, a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) defendants' intention to discriminate on the basis of race; and (3) the discrimination concerned one of the activities enumerated in the statute, such as the right to enforce a contract, sue and be sued, give evidence, etc.. *Brown v. City of Oneonta, New York*, 221 F.3d 329, 339 (2d Cir. 2000), *cert denied* 534 U.S. 816, 122 S.Ct. 44, 151 L.Ed.2d 16 (2001).

In order to survive a motion to dismiss (or, in this case, a motion for judgment on the pleadings), "the events of the intentional and purposeful discrimination, as well as the racial animus constituting the motivating factor for the defendant's actions must be specifically pleaded in the complaint." *Jenkins v. Arcade Bldg. Maint.*, 44 F.Supp.2d 524, 528 (S.D.N.Y. 1999). When discriminatory intent is at issue, "courts are cautious of summary adjudication." *Hicks v. IBM*, 44 F.Supp.2d 593, 598 (S.D.N.Y. 1999). However, "[c]onclusory or naked allegations" are

insufficient; "[f]act-specific allegations of a causal link between the defendant's actions and the plaintiff's race are required." *Dove v. Fordham Univ.*, 56 F.Supp.2d 330, 338 (S.D.N.Y. 1999), *aff'd sub nom. Dove v. O'Hare,* 210 F.3d 354 (2d Cir. 2000); *see also Dickerson v. State Farm Fire & Cas. Co.,* 95 Civ. 10733, 1996 WL 445076, at *3 (S.D.N.Y. Aug.1, 1996) ("It is not enough merely to assert that the defendant took adverse action against the plaintiff, and that the action was the product of racial animus. The complaint must allege specific facts supporting both the existence of the racial animus and the inference of a link between the adverse treatment and the racial animus."). Finally, a complaint with "other possible motives" for the alleged conduct that does not contain specific facts supporting a claim of racial animus "contradicts a claim of racial discrimination." *Hicks,* 44 F.Supp.2d at 598.

**i. Intent to Discriminate on the Basis of Race**

In the instant case, there is no dispute that Robledo is a member of a racial minority. Defendants argue that Robledo fails to allege sufficient facts to establish the required discriminatory intent under § 1981. Specifically, Defendants assert that there is no causal connection between the allegedly discriminatory statements or actions cited by Plaintiffs and the Defendants' conduct. *See* Defs.' Mem. L. 5–8. Defendants also contest that Robledo has standing to bring suit under § 1981 on the basis of Rahme's alleged discriminatory animus against blacks because Rahme did not know or think that Robledo was black. Defendants contend that Plaintiffs' Complaint does not adequately allege intentional discrimination or third-party contract interference concerning § 1981. Defs.' Mem. L. 8–10.

However, Plaintiffs' Complaint contains detailed allegations of specific conduct and statements which, if proven at trial, could give rise to an inference of discrimination. For example, Plaintiffs allege that "Defendant Rahme frequently ordered Robledo to leave the front

6

sales area of the store and go to the back of the store . . . because she wanted only white employees greeting customers at the front of the store." (Compl. at ¶ 22.) "Openly discriminatory oral statements merit similarly straightforward treatment." *Soules v. U.S. Dept. of Hous. & Urban Dev.*, 967 F.2d 817, 824 (2d Cir. 1992). At the pleading stage, such statements are sufficient to support § 1981 claims. *Hicks,* 44 F.Supp.2d at 598 (in an employment discrimination action under § 1981, comments directed against African–Americans, including "send them to school, clean them up and they still belong in the cotton field" and "I'm tired of black people taking taxes," were "sufficient to give rise to an inference of discriminatory intent" and sustain a § 1981 claim against a 12(b)(6) motion); *Long v. Aronov Realty Mgmt., Inc.,* 645 F.Supp.2d 1008, 1018 (M. D. Ala. 2009) (in an analysis under § 1981, the court found direct evidence of discriminatory intent when defendant told plaintiff that "they didn't want a black club there" and they didn't want a club resembling "Celebrations," which had been a hip hop bar.)

As already discussed, on a motion for judgment on the pleadings, the Court is required to accept Plaintiff's allegations in the Complaint as true. Defendants repeatedly cite inapposite cases that do not involve Fed. R. Civ. P. 12(c) or 12(b)(6), such as cases involving motions for summary judgment. After reviewing the totality of Rahme's comments, the Court finds that a reasonable inference may be drawn that Defendants' conduct was motivated by a racial animus against Robledo. Plaintiffs have sufficiently set forth a violation of § 1981 in their Complaint through Defendants' alleged discrimination of Robledo, expressed through Defendants' alleged disparate treatment of Robledo and hostile work environment.

Additionally, a plaintiff does not have to be a member of a racial minority to bring a claim under Section 1981; a non-minority plaintiff can allege personal injury stemming from a

defendant's discriminatory conduct against a racial minority. *Pisello v. Town of Brookhaven,* 933 F.Supp. 202, 215 (E.D.N.Y. 1996). Although Widmann is white, she alleges that she protested Rahme's verbal abuse of Robledo and that, in response, Rahme called Widmann "stupid." (Compl. ¶ 50.) Accordingly, at this early stage in the litigation, Defendants' motion for judgment on the pleadings as to Plaintiffs' § 1981 claim is DENIED.

**ii. Discrimination Concerning the Making and Enforcement of Contracts**

"Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship, so long as the plaintiff has or would have rights under the existing or proposed contractual relationship." *Domino's Pizza, Inc. v. McDonald,* 546 U.S. 470, 476, 126 S.Ct. 1246, 1250, 163 L.Ed.2d 1069 (2006). Moreover, § 1981 protects against the actions of third parties, as well as the actions of a directly contracting party. *Ginx, Inc. v. Soho Alliance,* 720 F.Supp.2d 342, 358 (S.D.N.Y. 2010) (citing *Whidbee v. Garzarelli Food Specialties, Inc.,* 223 F.3d 62, 75 (2d Cir. 2000) and *Faraca v. Clements,* 506 F.2d 956, 959 (5th Cir. 1975)).

Here, with respect to the third-party contractual relationship to unnamed African–American customers, the Court finds no violation of Section 1981. Section 1981 protects against the interference with a third-party contract, but liability only attaches to persons who actually had the power or authority to prevent the plaintiff from entering into a contract with the third party. *Ginx, Inc.,* 720 F.Supp.2d at 357–58 (citing *Harris v. Allstate Ins. Co.,* 300 F.3d 1183, 1197 (10th Cir. 2002) (requiring a showing "that the party both possessed sufficient authority to significantly interfere with the individual's ability to obtain contracts with third parties, and that the party actually exercised that authority to the individual's detriment")). Plaintiffs do not allege

that Defendants refused to sell to black customers; in fact, Plaintiffs allege that the store had "many black customers." (Compl. ¶ 47.)

Defendants argue that "no Section 1981 right of a third party actually has been violated." *See* Defs.' Mem. L. 9. Defendants do contest that no claim lies under § 1981's "making and enforcing of contracts" clause for interference with Plaintiffs' ability to serve African-American customers. *Ginx* involved § 1981 claims by a plaintiff bar, which alleged that defendants, community group leaders, interfered with its right to enter into prospective contracts by opposing the issuance of a liquor license to plaintiff. *Ginx, Inc.,* 720 F.Supp.2d at 357. Specifically, the plaintiff alleged that it was prevented from future contracts with customers who would have visited its establishment if defendants' use of the legal process had not contributed to its termination. *Id.* The court explained that "particular and specific business opportunities must be identified before a claim for third-party interference can be stated." *Id.* at 362. In *Ginx,* since the plaintiff "merely allege[d] possible loss of future opportunities with unnamed persons, rather than the loss of an identified business relationship that was the subject of the interference," the court dismissed plaintiffs' § 1981 claim. *Id.* at 360. The court upheld the principle that "particular and specific business opportunities must be identified before a claim for third-party interference can be stated." *Ginx, Inc.,* 720 F.Supp.2d at 362 (discussing *Rowe Entertainment, Inc. v. William Morris Agency, Inc.,* 2000 WL 896929, at *11–12 (S.D.N.Y. July 6, 2000)). Similarly here, Defendants claim that Plaintiffs have failed to identify specific contracts with identified customers which were allegedly impeded by Defendants' discriminatory conduct. The Court hereby dismisses the section of Plaintiffs' Section 1981 retaliation claim dealing with prospective business relationships with unnamed black customers. (*See* Compl. ¶ 59.)

**III. Motion to dismiss under 12(b)(1)**

Defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(1) argues that this Court should toss Plaintiffs' state law claims because the federal claims should be dismissed. Since Plaintiffs have remaining federal claims, Defendants' motion to dismiss Plaintiffs' state law claims is denied. This Court continues to exercise supplemental jurisdiction over Plaintiffs' state law claims.

### IV. Sanctions

Rule 11 governs motions for frivolous filings. "A pleading, motion or other paper violates Rule 11 either when it has been interposed for any improper purpose, or where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or good faith argument for the extension, modification or reversal of existing law." *See Kropelnicki v. Siegel,* 290 F.3d 118, 131 (2d Cir. 2002) (internal citations and quotations omitted). Courts impose Rule 11 sanctions with discretion and caution. *See Caisse Nationale de Credit Agricole–CNCA v. Valcorp.,* 28 F.3d 259, 264 (2d Cir. 1994); *Puccio v. Town of Oyster Bay,* 229 F.Supp.2d 173, 178 (E.D.N.Y. 2002).

Plaintiffs' counsel does not advance arguments that the Defendants' motion rises to the level of the extraordinary circumstances so as to warrant Rule 11 sanctions. *See Park v. Seoul Broadcasting Sys. Co.,* No. 05 Civ. 8956, 2008 WL 619034, at *1 (S.D.N.Y. Mar. 6, 2008) ("Courts have cautioned litigants that Rule 11 sanctions are reserved for extraordinary circumstances.") (citation omitted). The Court does not find that Defendants' motion was filed with an improper purpose or in bad faith. Therefore, the Plaintiffs' motion for sanctions against Defendants pursuant to Rule 11 is denied.

In conclusion, Defendants' motions for judgment on the pleadings is granted in part and denied in part. Defendants' motion to dismiss and Plaintiffs' motion for sanctions are all denied. The Clerk of Court is direct to close Docket Nos. 9 and 20.

Dated: New York, New York
September 3, 2013

SO ORDERED.

_____
Andrew L. Carter, Jr.
United States District Judge